**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GRAHAM B. SPANIER, : | |
|     Plaintiff : | |
| : | No. 1:14-cv-00599 |
| v. : | |
| : | (Judge Kane) |
| KATHLEEN G. KANE, : | |
|     Defendant : | |

**MEMORANDUM**

**I. BACKGROUND[1]**

Plaintiff Graham B. Spanier is a resident of the Middle District of Pennsylvania who from 1995 to 2011 served as the President of Pennsylvania State University ("Penn State"). (Doc. No. 1 ¶ 12.) In connection with the well-publicized criminal investigation and prosecution of former Penn State football coach Jerry Sandusky, the Office of the Attorney General of the Commonwealth of Pennsylvania summoned Plaintiff to testify before the Thirty-Third Statewide Investigating Grand Jury. (Id. at 19-20.) (See also Doc. Nos. 1-1; 1-2.) Plaintiff was accompanied by Penn State General Counsel Cynthia Baldwin, and gave sworn testimony on April 13, 2011. (Id. ¶¶ 17, 19-20.) Plaintiff denied any knowledge of Sandusky's crimes, and specifically denied knowledge of any allegations of sexual misconduct related to a 2001 "shower incident" involving Sandusky and a young boy, or a 1998 incident involving Sandusky and two young men. (See Doc. No. 1-2 at 23, 25-26.) On October 26, 2012, Ms. Baldwin testified before the Grand Jury and contradicted Plaintiff's testimony. (See Doc. No. 1-4 at 19.)

On November 1, 2012, Spanier was charged with perjury, and with six additional

---

[1] As explained in detail below, the Court relies on the uncontradicted factual assertions of Plaintiff's complaint and on the grand jury transcripts and court records submitted by the parties.

violations of the Pennsylvania Crimes Code: Endangering the Welfare of Children, Obstructing Administration of Law or other Governmental Function, Failure to Report, and three counts of Criminal Conspiracy. (Doc. No. 1 at ¶ 35.) In support of these charges, the Office of the Attorney General presented nine witnesses at a preliminary hearing before the Honorable William C. Wenner, who on July 29, 2013 ordered Spanier held on all charges. (Doc. Nos. 8-1; 8-6; 8-7; 8-8; 8-9.) The charges were transferred to the Dauphin County Court of Common Pleas, where as of the time of this complaint, they remain pending, subject to Spanier's pre-trial motions. (See Doc. No. 8-2.)

Plaintiff Spanier brings this federal civil rights action pursuant to 42 U.S.C. § 1983 seeking an order of this Court enjoining the state court prosecution. (Doc. No. 1.) Before the Court is Defendant Attorney General Kathleen G. Kane's motion to dismiss the complaint on the basis of abstention, or alternatively, for failure to state a claim upon which relief can be granted. (Doc. No. 6.) The matter is fully briefed and is ripe for disposition. For the reasons that follow, the Court finds that abstention is proper, and will grant Defendant's motion and dismiss the complaint.

## II. STANDARD OF REVIEW

As will be set forth in some detail below, the gravamen of Plaintiff's complaint is that he is being prosecuted by the Office of Attorney General in violation of his civil rights because of irregularities that occurred before the Grand Jury, and because the Attorney General initiated charges against him while failing to pursue charges against officials of the Second Mile, a charitable organization with which Sandusky was affiliated. (See Doc. No. 1.)

The Attorney General has moved to dismiss the complaint on abstention grounds under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), noting that courts have struggled with the proper characterization of motions to dismiss on abstention grounds.  (See Doc. No. 6; Doc. No. 12 at 2-3.)  Generally, when evaluating motions under Rule 12(b)(6), the Court is required to accept as true all well pleaded facts alleged by Plaintiff, and "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" in determining whether Plaintiff has articulated a claim.  Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004), abrogated on other grounds by Mierzwa v. Safe & Secure Self Storage, LLC, 493 F. App'x 273 (3d Cir. 2012).  In a Rule 12(b)(6) analysis, the Court is tasked with separating Plaintiff's factual allegations from naked assertions and legal conclusions, which the Court need not credit.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The Court then accepts Plaintiff's factual allegations as true for purposes of evaluating the motion to dismiss.

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim.  Fed. R. Civ. P. 12(b)(1).  The United States Court of Appeals for the Third Circuit has held that "dismissal without retention of jurisdiction on abstention grounds is in the nature of a dismissal under Federal Rule of Civil Procedure 12(b)(6).  Heritage Farms, Inc. v. Solebury Twp., 671 F.2d 743, 745 (3d Cir. 1982).  Although in resolving a motion under Rule 12(b)(6) a court must accept Plaintiff's factual allegations and construe them in the light most favorable to a plaintiff in order to determine whether plaintiff has stated facts sufficient to state a claim for relief, where a motion challenges the existence of subject matter jurisdiction the Court must weigh the evidence to ensure that it has the power to hear the case.  In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010); Mortensen v. First Fed. Sav. & Loan Ass'n,

549 F.2d 884, 891 (3d Cir. 1977). Here, where the essential facts that support Plaintiff's claim are not in dispute, the Court will give deference to Plaintiff's factual assertions. Consistent with the Third Circuit precedent governing Rule 12(b)(6) motions, the Court may also consider "documents that are attached or submitted with the complaint, and 'any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

### III. DISCUSSION

Defendant moves to dismiss Plaintiff's complaint on the basis of abstention under the longstanding doctrine of Younger v. Harris, 401 U.S. 37 (1971), which prohibits federal courts from interfering in state court prosecutions in all but the most extraordinary of cases. (Doc. No. 6.) In Younger, the United States Supreme Court affirmed the fundamental principles of comity and federalism that preserve the careful constitutional balance of federal and state powers, warning federal courts against overstepping federal jurisdictional limits. 401 U.S. at 46. The Supreme Court carefully outlined the considerations at issue in weighing federal court intervention in state court criminal proceedings. See id. at 54. The analysis remains unchanged to the present time, and dictates the Court's analysis here.

In Younger, a federal district court declared California's Criminal Syndicalism Act unconstitutional and enjoined the district attorney from prosecuting the plaintiff. Id. at 38. The United States Supreme Court reversed, affirming the "fundamental policy against federal interference with state criminal prosecutions . . . ." Id. at 46. While declining to articulate all

4

classes of cases in which federal court intervention might be proper, the Supreme Court was clear that absent a threshold showing of bad faith, harassment, or other unusual circumstances, a single criminal prosecution alone – even under an unconstitutional statute – will not warrant federal court intervention, nor will an allegation of irreparable harm based on a single prosecution. Id. at 46, 54. The Supreme Court then found the plaintiff failed to make a showing of bad faith or harassment justifying federal intervention. Id. at 49. The Supreme Court distinguished the plaintiff's allegations in Younger from Dombrowski v. Pfister, where it had previously found bad faith based on unlawful searches, seizures, and arrests, and officials' threats of future arrests and prosecutions despite court orders quashing the arrest warrants and issuing a temporary restraining order halting prosecutions. See 380 U.S. 479, 487-89 (1965).

Following Younger, the Supreme Court has declined to expand the bad faith exception to include additional classes of cases. In Perez v. Ledesma, the Supreme Court further iterated that a "bad faith" finding is available only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction. 401 U.S. 82, 85 (1971). This Court has noted that a hallmark of a bad faith prosecution is "evidence of multiple unsuccessful prosecutions." Schuler v. City of Chambersburg, Pa., 641 F. Supp. 657, 660-61 (M.D. Pa. 1986) (citing Dombrowski v. Pfister, 380 U.S. 479 (1965); Krahm v. Graham, 461 F.2d 703 (9th Cir. 1972)).

Plaintiff's complaint recites the language of Perez and urges this Court to find that his prosecution meets the Younger exception because it is in "bad faith" and "without hope of obtaining a valid conviction." (Doc. No. 1 ¶ 40.) To support his "bad faith" claim, Plaintiff alleges that the Office of the Attorney General elicited "uncounselled" grand jury testimony

from him, and the Office focused its investigation on officials of Penn State rather than the Second Mile. (Id. ¶¶ 23-27, 32, 37, 40.) The Court will address each argument.

### A. Plaintiff's "uncounselled" grand jury testimony

Plaintiff relies on grand jury transcripts to support his argument that the Deputy Attorney General in charge of the Thirty-Third Statewide Investigating Grand Jury "deliberately obtained uncounselled testimony from" him on April 13, 2011. (Id. ¶ 4(k).) The Court has carefully reviewed Plaintiff's testimony, as well as the record exchange between Penn State counsel Cynthia Baldwin and the supervising judge of the grand jury, Judge Barry F. Feudale, prior to Plaintiff's testimony. (See Doc. Nos. 1-1; 1-2; 1-4.) Ms. Baldwin advised Judge Feudale that she represented Penn State "solely," yet she was permitted to accompany Plaintiff into the Grand Jury room, and allowed to interpose objections on his behalf. (See Doc. No. 1-1 at 29; Doc. No. 1-2 at 10.) Plaintiff was permitted to confer privately with Ms. Baldwin during his testimony. (Doc. No. 1-2 at 9.) Judge Feudale advised Plaintiff of his right to counsel and his comments could be interpreted as understanding that Plaintiff was represented by Ms. Baldwin. (Doc. No. 1-1 at 29-32.) Plaintiff also referred to Ms. Baldwin as his attorney and was not corrected by Ms. Baldwin or the Deputy Attorney General. (Doc. No. 1-2 at 4.) Plaintiff thus alleges that he believed Ms. Baldwin was his attorney and that the Deputy Attorney General was aware of this fact. (Doc. No. 1 ¶ 25-27.)

Accepting these factual allegations as true, Plaintiff's allegations that he was "uncounselled," and that the prosecutor acted in bad faith by orchestrating events to deny him the benefit of counsel during his testimony, are legal conclusions that the Court cannot credit when determining whether his complaint states a claim. Twombly, 550 U.S. at 555. Moreover,

even were the Court to assume for the purposes of this motion Plaintiff was denied the benefit of counsel before the grand jury and the prosecutor acted in bad faith – Plaintiff still cannot satisfy the narrow Younger exception to federal court abstention.  It is well-established that where a plaintiff has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief, his claims will not be heard in federal court.  See Younger, 401 U.S. at 43.  Plaintiff's prosecutorial misconduct claim is precisely the type of claim routinely entertained in state court.  See, e.g., Muldrow v. DeFazio, No. 06-5486, 2007 WL 496813, at *3 (D.N.J. Feb. 13, 2007).  See also Mohoski v. Freeman, No. 09-2105, 2009 WL 3617738, at *2 (E.D. Pa. Oct. 30, 2009).  Indeed, the state court docket reflects that at the time Plaintiff filed this complaint in federal court, Plaintiff's pre-trial motions raising these very matters were presented to the state court for consideration.  See Commonwealth v. Graham B. Spanier, No. CP-22-CR-3615-2013.

       Moreover, state courts frequently consider the exact type of arguments that Plaintiff seeks to raise in this federal forum.  For example, the Superior Court of Pennsylvania considered a similar claim by a state criminal defendant in Commonwealth v. Williams, which this Court finds instructive.  565 A.2d 160 (Pa. Super. Ct. 1989).  Williams argued that he was prosecuted for perjury in bad faith where the prosecutor elicited his grand jury testimony before he was a target of the investigation, thereby creating a "perjury trap."  Id. at 163-65.  The Superior Court characterized Williams' "perjury trap" claim as one of "prosecutorial misconduct before a grand jury," and ultimately found that under the facts of the case the prosecutor had not committed prosecutorial misconduct.  Id.  From Williams, it is clear that Plaintiff's claim of prosecutorial misconduct is properly raised in state court.  See id.

      **B.**     **Ms. Baldwin's grand jury testimony**

Plaintiff's next argument is premised on the existence of an attorney-client relationship between him and Ms. Baldwin. Plaintiff argues that the prosecution was conducted in bad faith and without reasonable hope of conviction because his perjury charge was based largely on Ms. Baldwin's grand jury testimony, which the prosecutor knew was improper because such testimony necessarily violated Plaintiff's attorney-client privilege. (Doc. No. 1 at ¶ 4(c)-(l).) Plaintiff further argues that because the "infected perjury charge" is the "linchpin of all the other charges," "all of the charges are likewise infected by [the prosecutor's] bad faith." (Id. ¶ 4(m).) More specifically, Plaintiff contends that the prosecutor had no reasonable expectation of obtaining a valid conviction as to the charges of failure to report child abuse and endangering the welfare of a child because, in addition to being meritless, both would be barred by the applicable statute of limitations were it not for their connection to the perjury charge. (Id. ¶ 5.) Thus, Plaintiff argues that the prosecutor acted in bad faith because he "used [Plaintiff's] [grand jury] testimony in April 2011," in conjunction with Ms. Baldwin's testimony in October 2012, "as an alleged overt act in an attempt to resuscitate otherwise extinguished charges based on the incident that had occurred more than a decade earlier." (Id. at ¶ 4(b).)

Plaintiff will have the opportunity to pursue these claims by seeking to exclude Ms. Baldwin's testimony from his pending criminal proceedings on the grounds of privilege. See Commonwealth v. Graham B. Spanier, No. CP-22-CR-3615-2013, Order of January 17, 2014 (denying Dr. Spanier's motion to exclude Ms. Baldwin's testimony as premature). Plaintiff therefore "has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief" regarding the prosecutor's alleged elicitation of privileged testimony from Ms. Baldwin. Younger, 401 U.S. at 43-44.

Moreover, as discussed at length in connection with Plaintiff's allegations regarding his "uncounselled" testimony, the Younger bad faith prosecution threshold is not readily met. See Section III.A. Plaintiff's allegation that the Deputy Attorney General "questioned Baldwin extensively about privileged conversations she claimed to have had with [Plaintiff] in the context of her advising him about the grand jury and its investigation" does not rise to the level of bad faith prosecution requiring federal intervention. (Doc. No. 1 ¶ 32). Plaintiff's allegations lack the hallmarks of cases where federal courts have found intervention proper, such as repeated, unsuccessful prosecutions, continued arrests for harassment purposes, or unlawful seizures. See Dombrowski, 380 U.S. at 488-89. Rather, the prosecutor's use of Ms. Baldwin's allegedly privileged testimony is tantamount to a prosecution's purposeful use of inadmissible evidence, which the Supreme Court has repeatedly found does not warrant federal intervention. See Kugler v. Helfant, 421 U.S. 117, 130 (1975) (stating that "[the Supreme Court's precedents] clearly establish that at least in the absence of 'extraordinary circumstances' federal courts must refuse to intervene in state criminal proceedings to suppress the use of evidence claimed to have been obtained through unlawful means."); Dombrowski, 380 U.S. at 485 n.3 ("It is difficult to think of a case in which an accused could properly bring a state prosecution to a halt while a federal court decides his claim that certain evidence is rendered inadmissible by the Fourteenth Amendment."); Stefanelli v. Minard, 342 U.S. 117, 120 (1951) (holding that "federal courts should refuse to intervene in State criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure.").

If granted, Plaintiff's request that the Court enjoin his pending state criminal proceeding,

rather than suppress evidence as in Stefanelli v. Minard, would disrupt the principle of comity[2] which requires "that federal rights be protected in a manner that does not unduly interfere with the legitimate functioning of the judicial systems of the States." Kugler, 421 U.S. at 123. The Supreme Court's conception of comity requires this Court to refrain from intervening in Plaintiff's state criminal proceeding, because any issues arising from the prosecutor's elicitation of allegedly privileged, inadmissible statements from Ms. Baldwin are properly handled by the state court. See id.; Dombrowski, 380 U.S. at 484; Stefanelli, 342 U.S. at 120. Accordingly, the Court finds that the prosecutor's use of Ms. Baldwin's allegedly privileged testimony does not constitute a bad faith prosecution for the purposes of federal intervention, and thus the Court will not enjoin Plaintiff's state criminal proceeding on this basis.[3]

---

[2] The Supreme Court has defined "comity" as "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Younger, 401 U.S. at 44.

[3] The Court notes that Plaintiff additionally relies on Leer Electric, Inc v. Schmerin, No. 08-1785, 2011 WL 6026139 (M.D. Pa. Dec. 2, 2011), to support his conclusion that the prosecutor undertook Plaintiff's prosecution in bad faith without reasonable hope of a valid conviction. However, the Court finds Leer inapposite. Leer involved a complaint alleging that the Pennsylvania Department of Labor and Industry ("DLI") unfairly targeted an electrical contractor for debarment because he ran a non-union shop. See id. at *1. In finding Younger abstention unwarranted, the court held that the action did "not implicate important state interests," and further found that the plaintiff had "alleged a pattern of harassment" to meet the Younger bad faith exception. Id. at *3. The harassment included "using the [Pennsylvania Wage Act] to keep [plaintiff] from competing for public contracts, . . . DLI conduct[ing] its investigation in an inherently unfair and opaque manner, keeping [plaintiff] in the dark and misleading him into believing the investigation had been dropped while it built its spurious case . . . [and] arbitrarily reclassify[ing] employee work and then accus[ing plaintiff] of purposefully misclassifying it." Id. By contrast, it is undisputed that Plaintiff's pending criminal proceeding is a matter of utmost importance to the state. See Younger, 401 U.S. at 53-54. Further, Plaintiff has not alleged a pattern of harassment akin to that in Leer, but rather points to the prosecutor's alleged misconduct during two grand jury proceedings, and his decision to focus the

C.     **Selective prosecution**

Finally, Plaintiff asserts that the prosecutor's decision "to charge three individuals associated with Penn State (Schultz, Curley and later [Plaintiff]) but no one associated with The Second Mile," the organization for which Mr. Sandusky worked and which had supervisory responsibility over the boys Mr. Sandusky abused, further indicates that the prosecution was brought in bad faith.  (Doc. No. 1 ¶ 37.)  Again, however, the Court finds that such facts do not rise to the level of a bad faith prosecution requiring federal intervention.  Courts have found "no case law holding or even hinting that selective prosecution is an adequate reason to invoke an exception to the Younger abstention doctrine."  Palmarozza v. Platt, No. 86-0127, 1986 WL 2438, at *2 (E.D. Pa. Feb. 19, 1986).  See also Schuler, 641 F. Supp. at 659-60 ("There also appears to have been selective enforcement of the statute. [Plaintiff] has apparently been singled out by the defendants. . . .  We conclude that plaintiffs' allegations fail as a matter of law to establish their right to injunctive relief at this time.").  Accordingly, the Court finds that the prosecutor's alleged "selective" choice to charge individuals associated with Penn State does not meet the bad faith standard for an exception to Younger abstention, and will not enjoin Plaintiff's state criminal proceeding on this ground.

IV.    **CONCLUSION**

For the foregoing reasons, the Court finds the facts as alleged by Plaintiff do not satisfy the federal standard for intervention for a bad faith prosecution.  Thus, the Court will abstain under Younger, and will not intervene in Plaintiff's state criminal proceeding, leaving to the state

---

investigation on Penn State rather than The Second Mile. The Court finds such conduct, situated within the larger investigation, is minimal when compared to the abusive pattern of conduct described in Leer.  Accordingly, the Court does not find Leer persuasive authority.

11

court an assessment of whether any impropriety in the investigation and grand jury proceeding occurred, and whether Plaintiff is entitled to any relief. Because the Court will dismiss Plaintiff's complaint under the doctrine of Younger v. Harris, the Court will not reach Defendant's alternative argument for dismissal for failure to state a claim upon which relief can be granted. An order consistent with this memorandum follows.